United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CORNERSTONE STAFFING SOLUTIONS, INC., a California corporation, | No. 12-cv-01527 RS |
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN PART MOTION TO STRIKE PORTIONS OF FIRST AMENDED COUNTERCLAIM** |
| v. | |
| LARRY THAXTER JAMES, an individual, et. al., | |
| Defendants. | |

## I.     INTRODUCTION

Defendants and counterclaimants Larry James, et. al., filed a First Amended Counterclaim (FACC) asserting 18 claims against Mary Anderson and CornerStone Staffing Solutions, Inc. CornerStone moves to strike many of the FACC's averments as impertinent, immaterial, and scandalous under Rule 12(f). Pursuant to Civil Local Rule 7-1(b), this matter is suitable for decision without oral argument and is submitted accordingly. For the reasons discussed below, CornerStone's motion to strike is granted in part and denied in part.

## II.     BACKGROUND

CornerStone contends that James, its former manager, in conjunction with a number of individual and entity defendants, perpetrated an ongoing scheme to appropriate CornerStone's resources and customers.  Defendants counterclaimed against CornerStone and its owner and president, Anderson, averring breach of contract and other claims.  Recently, James moved to amend the counterclaim to plead additional facts and claims for relief, including breach of fiduciary duty.  The motion was granted in part and denied in part.  In particular, James was denied leave to amend to include statements of the "necessity" of CornerStone's tax returns, described as a "blatant attempt to have [the tax returns] deemed discoverable." Dkt. 145, 8.  Prior to moving to amend the counterclaims, James' motion to compel discovery of the tax returns had been denied by a magistrate judge.  *Id.*  James' subsequent motion for relief from the magistrate judge's order was denied.  CornerStone moves to strike several statements in the FACC, on the grounds that (1) their inclusion represents an improper attempt to establish the discoverability of CornerStone's tax returns; (2) averments related to cash-method accounting are irrelevant to James' claims which are based on accrual-method accounting; and (3) certain averments are scandalous and prejudicial to Anderson and CornerStone.  Mot. 8-12.

## III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) allows any "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter" to be stricken from a pleading.  Fed. R. Civ. P. 12(f).  Striking a matter under Rule 12(f) avoids spending time and money litigating spurious issues.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A matter is immaterial if it has no essential or important relationship to any of the pleaded claims for relief.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994).  A matter is impertinent if it does not pertain, and is not necessary, to the issues in question in the case.

United States District Court
For the Northern District of California

*Id.* A matter is scandalous if it "unnecessarily reflect[s] on the moral character of an individual . . . includ[ing] allegations that cast a cruelly derogatory light on a party or other person." *Brambila v. Wells Fargo Bank*, 2012 WL 5383306, at *2 (N.D. Cal. Nov. 1, 2012). Ultimately, the decision on a motion to strike vests within the court's discretion. *Guzman v. Bridgepoint Educ., Inc.*, No. 11cv69 WQH (WVG), 2013 WL 593431, *3 (S.D. Cal. Feb. 13, 2013) (citing *Fantasy, Inc.*, 984 F.2d at 1528).

Motions under Rule 12(f) are "generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *See Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)). They "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation[,]" and "courts are reluctant to determine disputed or substantial questions of law on a motion to strike." *Guzman*, 2013 WL 593431 at *4.

IV.     DISCUSSION

A. Claims Explicitly Referencing Tax Returns or Tax Improprieties.

In denying leave to amend James' counterclaim to state the "necessity" for CornerStone's tax returns, the prior order noted:

> The portions of the proposed pleading to which the CornerStone parties object are conclusory assertions that '[a]ccess to CornerStone's tax returns is necessary' and are a blatant attempt to have them deemed discoverable. These averments are not connected in any meaningful way to the new factual allegations or claims for relief advanced by the proposed amended counterclaims. This attempt to amend the pleadings to define the tax documents in such a way as to bestow relevance artificially upon them is simply silly.

Dkt. 145. All but two of the references to CornerStone's tax returns or tax improprieties allegedly committed by Anderson are a similar attempt to render CornerStone's tax returns discoverable, despite the repeated denial of James' motion to compel their production. Such averments are

United States District Court
For the Northern District of California

immaterial and impertinent, because they have "no essential or important relationship to the claims for relief." *Guzman*, 2013 WL 593431 at *5 (quoting *Fantasy, Inc.*, 984 F.2d at 1527-28). As was explained in denying James' request for discovery of the tax returns, "You have to show the underlying fraud independent of what was put in the tax returns . . . . If you don't, it doesn't matter what the tax returns say . . . the government is not the victim in this case, so what was reported to the IRS is not by itself relevant . . . ." Dkt. 108, 5-6.

Unlike some of James' other averments discussed below, these statements are also immaterial and impertinent to James' claim that Anderson breached her fiduciary duty to him. The basis of this claim is that Anderson is averred to have improperly paid forward expenses and delayed depositing checks, in order to deplete CornerStone's cash reserves and unnecessarily force CornerStone to take loans from her at a high interest rate. FACC ¶ 147; Opp. Mot. 9. In paragraph 32 of the FACC, James avers Anderson made unnecessary deposits with CornerStone's insurance carrier, but whether those deposits were reflected as deductions on CornerStone's tax returns is immaterial to whether they created an artificial need for loans from Anderson. Similarly, whether Anderson prematurely deducted workers' compensation premiums, discussed in paragraph 35, is irrelevant to whether those payments generated an unnecessary need for loans. Whether she over-reported deductions by declaring prepaid expenses that had not accrued, averred in paragraph 40, is immaterial for the same reasons.

James' averments of tax fraud are likewise impermissible because they are scandalous. Statements may be stricken if they place "undue emphasis on the criminal nature of Defendants' conduct in terms that have no bearing on the claims Plaintiff is asserting." *See Xcentric Ventures LLC v. Borodkin*, No. CV-11-1426-PHX-GMS, 2012 WL 692976, *12 (D. Ariz. Mar. 1, 2012) (striking statements averring perjury, reasoning the plaintiff accused the defendant of violating criminal statutes that were not alleged to have any bearing on the legal claims in the complaint).

1   Similarly, by averring Anderson committed tax fraud, James places an undue emphasis on her moral

2   character. Such conduct has no bearing on James' claims, since the government is not the victim in

3   this case, as discussed above. His averments of tax fraud thus "unnecessarily reflect[] on the moral

4   character [of Anderson]" and place her in a "cruelly derogatory light[.]" *Brambila*, 2012 WL

5   5383306, at *2.

6

7        As included in the FACC, it is clear that the following averments about tax fraud and tax

8   deductions "could have no possible bearing on the subject matter of the litigation." *Guzman*, 2013

9   WL 593431 at *4. Those matters are immaterial, impertinent, and scandalous for the reasons

10  explained above. The following is stricken from the FACC:

11
12       •    Para. 32, p. 9, lines 13-16: "Moreover, Mr. James believes that Ms. Anderson
              prematurely declared those deposits as deductions on CornerStone's tax returns
13            despite the fact that CornerStone would not incur those expenses until possibly
              years later, if at all."

14       •    Para. 34, p. 10, line 7: "and may constitute a violation of tax law."[1]
15
         •    Para. 35, p. 10, lines 9-10: "Mr. James believes that she did that in order to
16            prematurely declare them as tax deductions."

17       •    Para. 35 p. 10, lines 12-13: "and improperly declared those amounts as deductions
              in the year"
18
19       •    Para. 40, p. 12, lines 5-6: "2) over reporting deductions by declaring expenses that
              were prepaid but had not yet accrued;"

20       •    Para. 40, p. 12, lines 12-13: ", despite what CornerStone's tax statements may
21            show"[1]

22       •    Para. 40, p. 12, lines 14-15: ", and that she may have caused CornerStone to
              misrepresent its profits to the United States Internal Revenue Service and/or the
23            California Franchise Tax Board."[1]

24       •    Para. 114, p. 29, line 12: "and took the entire deduction for the mortgage payment
              herself."
25

26

27  ───────────────────────

28  [1] James raises the additional argument that the motion should be denied as to these averments for
    being untimely, because they were included in the counterclaim filed one year ago. Rule 12(f)
    allows a motion to strike to be brought within 21 days of new pleadings. Since the FACC was filed
    on May 3rd, CornerStone's motion to strike on May 16th is timely.

With respect to two references to CornerStone's tax returns, the motion is denied:

- Para. 34, p. 9, lines 21-26: "Mr. James believes that Ms. Anderson insisted on those practices in order to eliminate any profits for the fiscal year. Ms. Anderson never permitted Mr. James, Melba Bachem, who was CornerStone's Controller, or anyone else at CornerStone to inspect CornerStone's tax returns, the documents that Paul Danis (Ms. Anderson's personal accountant) relied on to prepare CornerStone's tax returns, or the 2008 Review Report prepared by an independent accounting firm at the request of CornerStone's workers' compensation insurance carrier."

- Para. 37, p. 10, lines 22-28: "Shareholder loans and interest payments have to be reported on a corporation's tax returns. Mr. James believes that Ms. Anderson did not report her investment as a loan or any interest payments on CornerStone's tax returns. The investment was not reported as a loan on CornerStone's internal financial statements. If the loan and interest payments were never shown on CornerStone's tax returns then Ms. Anderson's investment in CornerStone is properly characterized as owner's equity, not a loan. In that case, she is not entitled to any interest. Because interest on loans is an operating expense, it must be deducted before determining net profits and value."

The averments in paragraph 34 are relevant to James' breach of contract claim. James contends Anderson breached a promise to provide him with access to CornerStone's financial documents, connected to their alleged profit-sharing agreement. Opp. Mot. 11. Failure to do so could constitute a breach of contract, according to the contract's terms averred by James, in particular the averred eighth provision which states: "Mr. James will have access to CornerStone's financial documents including but not limited to its tax returns for the purposes of determining his profit sharing interest and share of the net proceeds." Opp. Mot. 6. This statement could have "possible bearing on the subject matter of the litigation[,]" *Guzman*, 2013 WL 593431 at *4, and is therefore allowed.

The statements in paragraph 37, concerning averred loans Anderson made to CornerStone, could support James' claim for breach of fiduciary duty. Her entitlement to interest on loans she allegedly made to CornerStone could affect profits potentially owed to James. If she collected interest she was not entitled to receive, that could show she breached a fiduciary duty to James, by

NO. 12-CV-01527 RS
ORDER ON MOTION TO STRIKE

United States District Court
For the Northern District of California

improperly reducing the profits allegedly subject to division between them.  These statements could

have "possible bearing on the subject matter of the litigation[,]" *id.*, and are therefore allowed.

These statements are also not properly characterized as "scandalous."  Unlike James'

averments of tax fraud, his statements regarding Anderson's averred withholding of documents and

loan activities do not directly aver criminal conduct.  As previously discussed, they are also

potentially relevant to James' breach of contract or breach of fiduciary duty claims.  For these

reasons, they do not place an "undue emphasis on the criminal nature of Defendants' conduct in

terms that have no bearing on the claims Plaintiff is asserting." *Borodkin*, 2012 WL 692976, at *12.

They are not scandalous because they do not "unnecessarily reflect[] on the moral character [of

Anderson]" or place her in a "cruelly derogatory light[.]" *Brambila*, 2012 WL 5383306, at *2.

B.  Accounting Claims.

CornerStone's alleged actions related to its cash flow and accounting practices may be

relevant to James' claim that Anderson breached her fiduciary duty to him.  James Decl. ¶ 4.  The

crux of James' argument is that Anderson improperly paid forward expenses and delayed depositing

checks, in order to deplete CornerStone's cash reserves and unnecessarily force CornerStone to take

loans from her at a high interest rate.  FACC ¶ 147; Opp. Mot. 9.  His statements about Anderson's

prepayment of expenses, withholding of deposits, improper accounting practices, and artificial need

for loans, if established, could support his averments about CornerStone's artificial need for loans

and thereby his claim for breach of fiduciary duty.  His statement that CornerStone generated

significant net profits, if established, could also support his claim Anderson breached her fiduciary

duty to him by misrepresenting those profits.  FACC ¶ 147.  These statements are material and

pertinent because they could have "possible bearing" on James' fiduciary duty claim, holding an

"essential or important relationship" to the claim. *Guzman*, 2013 WL 593431 at *4-5 (quoting

*Fantasy, Inc.*, 984 F.2d at 1527-28). It is therefore unnecessary to reach the question of whether these statements are relevant to James' other claims.

These statements are also not properly characterized as "scandalous." Unlike James' averments of tax fraud, his statements regarding Anderson's payment of expenses and deposits do not directly aver criminal conduct. As previously discussed, they are also potentially relevant to James' claim that Anderson breached her fiduciary duty to him. For these reasons, they do not place an "undue emphasis on the criminal nature of Defendants' conduct in terms that have no bearing on the claims Plaintiff is asserting." *Borodkin*, 2012 WL 692976, at *12. They are not scandalous because they do not "unnecessarily reflect[] on the moral character [of Anderson]" or place her in a "cruelly derogatory light[.]" *Brambila*, 2012 WL 5383306, at *2.

For the foregoing reasons, the motion is denied with respect to the following:

- Para. 31, p. 9, lines 3-5: "As the end of the calendar year approached, Ms. Anderson instructed CornerStone to pay forward all expenses where possible to zero out CornerStone's case reserves, including expenses that had not yet accrued"

- Para. 33, p. 9, lines 17-20: "At the same time, Ms. Anderson would instruct CornerStone to hold large revenue checks that came in during December and not deposit them until after January 1. CornerStone receives significant revenue every month. The checks CornerStone received during December 2011 but held until the next year probably exceeded $5 million."

- Para. 34, p. 10, lines 2-7: "During CornerStone's nine years of existence, neither Mr. Anderson, Mr. Danis, nor anyone else said that CornerStone should not be calculating those amounts on an accrual basis. If there was no net profit for the year, no disbursement of net profits to Mr. James would be due. Mr. James is informed and believes that holding checks received during the fourth quarter of one year and not depositing or recording them until after January 1st of the next year is not an accepted accounting practice[.]"

- Para. 35, p. 10, lines 8-9: "In addition to withholding deposits, at the end of every year Ms. Anderson paid forward or prepaid expenses that had not yet accrued."

- Para. 35, p. 10, lines 11-13: "Mr. James believes that CornerStone prepaid significant amounts of its workers' compensation premiums prior to the year when the expense was actually incurred."

- Para. 40, p. 12, lines 5-8: "by: 1) under reporting income by withholding deposits; 3) creating an artificial need for loans by depleting CornerStone's cash reserves;

United States District Court
For the Northern District of California

4) failing to report loans, and 5) attempting to overcharge for loans, even after CornerStone no longer needed loans."

- Para. 40, p. 12, lines 10-12: "As stated above, based on Mr. James' intimate knowledge of CornerStone's finances as its Managing Director for nine years, he knows that CornerStone has generated significant net profits."

- Para. 40, p. 12, lines 13-14: "Mr. James is informed and believes that Ms. Anderson's accounting practices were improper."

V.    CONCLUSION

Plaintiff's motion to strike is granted in part and denied in part.

IT IS SO ORDERED.

Dated: 7/12/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

No. 12-CV-01527 RS
ORDER ON MOTION TO STRIKE