IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CORNERSTONE STAFFING SOLUTIONS, INC., a California corporation,<br><br>   Plaintiff,<br> v.<br><br>LARRY THAXTER JAMES, an individual; *et al.*,<br><br>   Defendants.<br>_____/ | No. C 12-1527 RS<br><br>**ORDER DENYING MOTION TO DISMISS AND MANDATING FURTHER DISCLOSURE** |

## I.  INTRODUCTION

CornerStone Staffing Solutions Inc., a California-based staffing firm, is embroiled in a dispute with several individuals and entities. This motion arises from co-defendant Marcos Barrera's allegation that CornerStone undertook unethical and abusive litigation tactics, including the alleged violation of a protective order and improper retention of privileged attorney-client information. Invoking Federal Rule of Civil Procedure 41(b), Barrera seeks dismissal of all claims against him. Alternatively, he requests counsel for CornerStone be disqualified. For the following

1 reasons, Barrera's motion for terminating sanctions is denied. In light of CornerStone's failure to
2 abide by its discovery obligations, however, it needs to provide further explanation as to the extent
3 of any unauthorized disclosure.

## II.   BACKGROUND[1]

In August 2012, CornerStone propounded upon Barrera a request for inspection of certain computer hard drives. Barrera objected. After CornerStone sought to compel production of the devices, the magistrate judge assigned to this matter convened a hearing in July 2013. At the hearing, the parties negotiated a compromise: Barrera would produce forensic images of the two hard drives at issue to CornerStone's expert Mark Alcock, whose review of the drives would be restricted by the terms of a protective order entered into by the parties in August 2013. That order imposed a series of restrictions to ensure that Alcock's examination of the computers, and CornerStone's potential use of information gleaned therefrom, would be narrowly circumscribed.[2]

Alcock reviewed the hard drives and sent a report of his findings to counsel for CornerStone and Barrera. Alcock's report concluded, among other things, that Barrera had used an additional, undisclosed computer to access CornerStone's servers. In support of this conclusion, Alcock supplemented his report with several documents from the hard drives, including an email from Barrera to an attorney representing him in this matter. Upon realizing that Alcock had disclosed an attorney-client communication, counsel for Barrera contacted counsel for CornerStone and demanded the email be disregarded and destroyed. CornerStone refused.

CornerStone quoted several items drawn from the hard drives in discovery responses served on all parties on September 20, 2013. Although the information provided by Alcock was for "attorney's eyes only" under the terms of the protective order, counsel for CornerStone permitted

---

[1] The basic facts underlying this action have been laid out in detail in prior court orders. See, *e.g.*, Order Granting in Part and Denying in Part Motions for Summary Judgment, Oct. 21, 2013, ECF No. 223.

[2] As an initial matter, the protective order provides that the contents of the hard drives are for "expert eyes only." (ECF No. 168 ¶ B-2). The order further delineates limited circumstances permitting Alock's disclosure of the hard drive information to others. If, based on his expert opinion, Alcock believes he has identified "any items relevant to the allegations against Mr. Barrera pertaining to the March 23, 2012 through March 25, 2012 timeframe," he shall simultaneously reveal those findings to counsel for both CornerStone and Barrera. (¶ B-3). If this occurs, Alcock's findings are for "attorney's eyes only," pending further stipulation or court order. *Id.*

2

plaintiff Mary Anderson to review unredacted portions of Barrera's private communications when verifying CornerStone's discovery responses. In a supporting declaration, Barrera states that the contents of his private correspondence were somehow "leaked" to various people at DeployHR, his place of employment. Barrera's co-workers questioned him about the emails. Barrera declares that he suffered "tremendous stress, frustration, and embarrassment" as a result of his private communications being exposed despite the terms of the protective order. CornerStone later relied on the hard drive materials in its opposition to Barrera's motion for summary judgment.[3]

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) provides that a defendant may move for dismissal of an action for "failure of the plaintiff to prosecute or to comply with these rules or any order of court." Fed. R. Civ. P. 41(b). "Before imposing dismissal as a sanction, the district court must weigh several factors: the public's interest in expeditious resolution of litigation; the court's need to manage its docket; the risk of prejudice to the defendants; the public policy favoring disposition of cases on their merits; and the availability of less drastic sanctions." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996). "Dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir.) (per curiam), *cert. denied*, 479 U.S. 829, 107 S. Ct. 112, 93 L. Ed. 2d 60 (1986).

### IV. DISCUSSION

Barrera alleges CornerStone undertook a variety of bad acts and abusive litigation practices, including: (1) reviewing the hard drives, vis-à-vis Alcock, in a manner exceeding the scope permitted by the protective order, (2) improperly acquiring protected information from the hard drives from Alcock, (3) improperly disclosing such material, and (4) improperly using the information against Barrera.

---

[3] The materials from the hard drives supporting CornerStone's opposition were initially redacted and filed alongside an administrative motion to seal. The parties' sealing motions were collectively denied at the October 2013 summary judgment hearing. The court directed the parties to file narrower sealing motions, if any, within one week. No additional sealing motions were filed. Accordingly, the underlying correspondence is now public.

3

As an initial matter, neither the scope nor the effects of CornerStone's alleged bad acts are nearly as severe as Barrera contends. First, Barrera fails to establish that Alcock's review of the hard drives, or his disclosure to counsel of certain materials contained therein, violated the protective order. Nor was it improper for CornerStone to utilize communications from the hard drives in support of its opposition to Barrera's motion for summary judgment. Accordingly, neither of these acts warrants sanctions of any sort. As discussed below, however, Barrera demonstrates that CornerStone (a) retained privileged attorney-client communications and (b) violated the protective order by disclosing contents of Barrera's private documents to Anderson.

### A. Retention of Privileged Attorney-Client Information

In a letter sent to counsel for Barrera and CornerStone on September 24, 2013, Alcock disclosed an email from Barrera to an attorney representing him in this matter. Despite repeated requests from counsel for Barrera, CornerStone declined to return or destroy the communication. CornerStone agrees that absent waiver or exception, this particular attorney-client email would be protected by the attorney-client privilege. *See Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (attorney-client privilege protects from disclosure "confidential communications made by a client to an attorney to obtain legal services."). It contends, however, that this communication falls within the crime-fraud exception to the privilege.[4]

CornerStone must meet a two-part test in order to satisfy the crime-fraud exception to the attorney-client privilege:

> First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of [the] intended, or present, continuing illegality.

*In re Grand Jury Investigation*, 231 Fed. Appx. 692, 696 (9th Cir. 2007) (internal citations omitted). Although CornerStone claims the crime-fraud exception applies, its opposition brief makes no attempt to demonstrate that an *in camera* review of the challenged document is warranted. *See United States v. Zolin*, 491 U.S. 554, 565 (1989) ("Before engaging in *in camera* review to

---

[4] In its opposition to this motion, CornerStone contends that Barrera waived the attorney-client privilege. At hearing, however, CornerStone effectively waived its waiver argument.

4

1 determine the applicability of the crime-fraud exception, the judge should require a showing of a
2 factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera*
3 review of the materials may reveal evidence to establish the claim that the crime-fraud exception
4 applies.") (citation and quotation marks omitted). Nonetheless, at hearing, Barrera consented to an
5 *in camera* review of the email. *See id.* at 572 (decision to conduct *in camera* review "rests in the
6 sound discretion of the district court."). The review confirmed that there is no basis for CornerStone
7 to assert that the crime-fraud exception applies. Accordingly, the email is protected by the attorney-
8 client privilege.

9 CornerStone maintains it has not used the privileged email in this litigation. Alcock's
10 September 24 letter indicates, however, that he relied in part on the email to conclude that Barrera
11 had used an undisclosed computer to access CornerStone's servers. Barrera accordingly alleges that
12 the email motivated CornerStone's decision to accuse him of possessing a third, undisclosed device.
13 Assuming this is so, Barrera nonetheless fails to demonstrate he suffered prejudice as a result.
14 Although CornerStone invoked the "third computer" allegation in an attempt to seek a Rule 56
15 continuance of Barrera's motion for summary judgment, CornerStone's request was denied. (ECF
16 No. 223). Moreover, at hearing Barrera acknowledged that the "third computer" allegation was
17 prompted in part by other, non-privileged documents found on his hard drives. Further, Barrera
18 ultimately obtained summary judgment on CornerStone's claims that he violated the Computer
19 Fraud and Abuse Act, effectively foreclosing CornerStone's "third computer" theory from carrying
20 further relevance in this case. Nonetheless, while the resulting prejudice to Barrera is at best slight,
21 it was improper for CornerStone to retain this privileged attorney-client communication.[5]

22     B.   Disclosure of Private Communications to Mary Anderson

23 CornerStone concedes it violated the protective order by allowing Anderson to review
24 discovery responses containing unredacted quotations of certain documents found on Barrera's hard

---

[5] *See* Comment to Model Rule of Professional Conduct 4.4(b) (governing attorney acquisition of privileged information inadvertently produced by opposing party). Moreover, CornerStone is obligated by an earlier protective order to work to rectify the inadvertent disclosure of attorney-client information. *See* Stipulation for Protective Order and Order Thereon, May 24, 2012, ECF No. 28 ¶ 17.

drives. It maintains, however, that this disclosure was inadvertent and accidental. Upon realizing it had violated the protective order, CornerStone admitted its mistake to Barrera.

Like the improper retention of Barrera's attorney-client communication, CornerStone's protective order violation had no effect on Barrera's ability to defend himself in this action. While it was improper for CornerStone to permit Anderson to review its unredacted discovery responses, these communications were eventually made public due to the parties' failure to lodge adequately-supported, narrowly-tailored sealing motions pursuant to Civil Local Rule 79-5. Although CornerStone's error cannot not be excused, and while Barrera's resulting emotional distress should not be discounted, terminating sanctions are not justified for this relatively technical violation of the protective order.

C. Appropriate Remedy

While Barrera contends the totality of the circumstances warrants significant sanctions, he has not provided a sufficient basis for dismissing CornerStone's claims or disqualifying CornerStone's counsel. These extreme remedies are widely excessive vis-à-vis the alleged conduct, which caused little -- if any -- prejudice to Barrera.

Nonetheless, CornerStone's conduct warrants further inquiry. "Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f)." *Life Technologies Corp. v. Biosearch Technologies, Inc.*, 2012 WL 1600393 (N.D. Cal. 2012); *see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) ("failure to obey the protective discovery order exposed counsel and Falstaff to liability under Rule 37(b)(2) for the resulting costs and attorney's fees"). Here, CornerStone violated the protective order by allowing Anderson to review unredacted portions of communications found on Barrera's hard drive. Although CornerStone contends no additional violations occurred, it has refused Barrera's requests to provide a list of all documents it received from Alcock. Meanwhile Barrera, concerned about the possible extent of CornerStone's and Anderson's review of his private files, has been forced to change passwords and security measures for his personal accounts. To address this violation of the protective order, counsel for CornerStone must provide a list detailing all hard drive documents it

received as a result of Alcock's review of Barrera's forensic images. Counsel for CornerStone shall submit this list, accompanied by a declaration detailing the circumstances under which it permitted any non-attorneys to review any portion of such documents, within seven days of the issuance of this order. So as to protect Barrera's privacy, the filing shall be made under seal.

CornerStone also refused Barrera's requests to return or destroy a privileged attorney-client communication between Barrera and his counsel.[6] CornerStone is hereby ordered not to use the privileged email for any purpose whatsoever in this litigation or otherwise.

## V. CONCLUSION

For the foregoing reasons, Barrera's motion for dismissal or disqualification is DENIED. CornerStone is hereby ORDERED to provide the further information described above in Section IV-C.

IT IS SO ORDERED.

Dated: 1/28/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[6] The privileged email has been sealed and filed as an exhibit accompanying this order.